**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | Case No. 03 CR 80 |
| ) | |
| KEITH COLLINS and GREGORY McNEAL ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Keith Collins and Gregory McNeal were charged with conspiracy to distribute, and to possess with intent to distribute, more than fifty grams of "cocaine base (commonly known as 'crack cocaine')," as well as possession of more than fifty grams of that substance with intent to distribute. McNeal was also charged with possession of a weapon in relation to a narcotics crime, as well as unlawful possession of a weapon by a felon. Prior to trial, after holding an evidentiary hearing, the Court denied both defendants' motions to suppress the narcotics and other evidence on the ground that it had been obtained as the result of an unlawful seizure.

Shortly before trial, the government moved to sever the trials of the two defendants on the grounds that it wished to introduce against each defendant an inculpatory statement by that defendant that also implicated the other defendant. The defendants agreed to the motion for severance.

Before trial, after extensive discussion, both defendants and the government agreed to a procedure under which a single trial of both defendants would be held, with a separate jury empaneled to hear each defendant's case. The trial was held in this District's ceremonial courtroom, which has two jury boxes. Each jury was advised that separate juries were being

empaneled to ensure that each defendant received separate consideration of his case. Each jury was excused when opening statements and closing arguments on the other defendant's case were being presented (this resulted in the government giving separate opening statements and closing arguments for each defendant), and was also excused when evidence admissible only against the other defendant was admitted.

Both defendants were convicted on all counts. Each has moved for a judgment of acquittal or for a new trial. Each has also raised a sentencing-related issue that intertwines, to some extent, with the issues raised in their post-trial motions.

**A.     Motions for judgment of acquittal or new trial**

   **1.     Issue specific to defendant Collins**

The closing arguments on Collins' case were delivered prior to the closing arguments on McNeal's case. Many of the exhibits offered by the government had been admitted against both defendants. During his closing argument, Collins' attorney made use of certain of the exhibits, including defense exhibits. The jury began its deliberations on Collins' case while closing arguments were presented to the jury in McNeal's case. The exhibits were not immediately sent back to the Collins jury, as the government intended to make use of a number of its exhibits during the McNeal closing arguments, and the Court wanted to provide the jury a complete set of the exhibits all at once, rather than sending them back piecemeal.

Soon after it began its deliberations, the Collins jury requested a list of the exhibits. At the time, the exhibits were being used in the McNeal closing arguments, so the Court determined they would be made available to the Collins jury as soon as those arguments concluded. However, before the exhibits could be provided, the Collins jury advised that it had reached a

verdict.

Collins now objects that "[t]he procedure implemented in the double-jury trial deprived [him] of his right to due process by preventing him from presenting a full defense. Had Collins received a single jury trial, the jury would have received the exhibits and the guidance from the trial judge it requested." Collins Mem. at 3. This argument is without merit. Collins knowingly and voluntarily agreed to the double-jury procedure and thus waived the right to argue that the procedure violated due process. Collins may challenge the propriety of the jury's return of a verdict without having the trial exhibits, but his challenge is not evaluated any differently than it would be if he had been tried alone, without a co-defendant.

When the jury retired to deliberate, Collins did not request that the jury be advised not to begin its deliberations until the exhibits were provided. Nor, when the jury requested the exhibit list, did Collins ask that the jury be told to put its deliberations on hold until the list and/or the exhibits could be provided. Under the circumstances, Collins has forfeited any objection to the jury's continuation of its deliberations, or to its return of a verdict, without having the exhibits in-hand. In any event, even after asking for the exhibit list, the jury was entitled to change its mind and return a verdict before it had the list or the exhibits. *See United States v. Pickard,* 278 F. Supp. 2d 1217, 1236 (D. Kan. 2003). Collins is not entitled to a new trial on this basis.

### 2. Issues common to Collins and McNeal

Both defendants make a number of conclusory assertions of error. For the most part, these arguments are so undeveloped that they are deemed forfeited and thus do not entitle either defendant to a new trial. *See, e.g., United States v. Andreas,* 150 F.3d 766, 769-70 (7th Cir. 1998). These include Collins' contentions that he was entitled to due process of law and did not

3

receive a fair and impartial trial, and McNeal's boilerplate arguments that the Court erred in overruling unidentified objections to the jury instructions and in failing to give unidentified instructions, in denying unnamed oral motions before and during trial, and in overruling unspecified evidentiary objections.

Both defendants argue that the Court should reverse its earlier ruling denying their motions to suppress evidence. McNeal identifies no new evidence that would warrant reconsideration; his motion is denied. Collins says that the trial testimony of co-defendant Rokesha Johnson, who testified as a government witness, establishes that evidence the Court relied upon in denying the pretrial motion to suppress was untrue. The Court disagrees; Johnson's testimony that a particular officer approached her after her vehicle was stopped and asked where a particular item was is not necessarily inconsistent with the officer's testimony at the pretrial hearing that he looked inside the vehicle and saw the item. In any event, Johnson's trial testimony does not cause the Court to doubt the accuracy of the officer's pretrial testimony, and thus reconsideration is unwarranted.

Both defendants argue the evidence offered at trial was insufficient to prove that the narcotic substance recovered in the case was in fact crack cocaine. The Court disagrees. As the government argues, the testimony of a DEA forensic chemist that the substances were consistent with crack cocaine; the physical characteristics of the substances; (as to Collins) Collins' admission that he and McNeal cooked crack cocaine; and (as to McNeal) the recovery of items commonly used to cook crack cocaine, was sufficient to satisfy the government's burden of proof. *See, e.g., United States v. Linton,* 235 F.3d 328, 330 (7th Cir. 2000).

There was sufficient evidence of a conspiracy to admit co-conspirator declarations under

4

Federal Rule of Evidence 801(d)(2) – and in any event, defendants did not object to such evidence at trial. Finally, the evidence offered at trial, considered in the light most favorable to the government as required on a motion for judgment of acquittal or for a new trial, was more than sufficient to satisfy the government's burden of proving the defendants' guilt on all the charges, and those verdicts were not against the manifest weight of the evidence.

The Court has reviewed the defendants' remaining arguments and finds them to be without merit.

For these reasons, the Court denies each defendant's motion for a judgment of acquittal or for a new trial.

**B.     Sentencing issue**

The government contends that based on the jury's findings, both Collins and McNeal are subject to enhanced minimum and maximum sentences applicable to offenses involving more than fifty grams of substances containing "cocaine base," *see* 21 U.S.C. § 841(b)(1)(A)(iii), which the Seventh Circuit has held means crack cocaine – one form (but not the only form) of cocaine base. *See United States v. Edwards,* 397 F.3d 570, 571 (7th Cir. 2005); *see also, United States v. Booker,* 70 F.3d 488, 494 (7th Cir. 1995). In their sentencing memoranda, Collins and McNeal contend the predicate for application of the higher minimum and maximum has not been established.

Under *Apprendi v. New Jersey,* 530 U.S. 466 (2000), any fact that subjects the defendant to a higher maximum sentence must be proven to a jury beyond a reasonable doubt. In a § 841 case, determination of whether the narcotic the defendant distributed was crack cocaine is such a fact. After *Apprendi,* "drug type and quantity remain sentencing issues, but the burden of proof

5

and fact finder have changed." *See United States v. Knight,* 342 F.3d 697, 710 (7th Cir. 2003); *Horton v. United States,* 244 F.3d 546, 552 (7th Cir. 2001). Specifically, a defendant may be subjected to an enhanced sentence based on drug type and quantity under § 841(b) only if the facts supporting the enhancement were "proven to a jury beyond a reasonable doubt." *United States v. Knight,* 342 F.3d 697, 710 (7th Cir. 2003); *United States v. Nance,* 236 F.3d 820, 824-25 (7th Cir. 2000).

McNeal argues in his sentencing memorandum – entitled "position statement with respect to the narcotic substance for which he should be sentenced" – that the evidence presented at trial failed to prove beyond a reasonable doubt that the substance seized was crack cocaine. It appears that McNeal is attempting to rehash, and perhaps expand upon, the sufficiency argument made in his post-trial motion. Either way, the argument is without merit. As the Court indicated earlier, the evidence (taken in the light most favorable to the government, as the law requires on a motion for judgment of acquittal) was sufficient to prove beyond a reasonable doubt that the substances were crack cocaine.

The same is true of the parallel argument made in Collins' sentencing memorandum. Collins, like McNeal, appears to reargue the sufficiency of the evidence presented to the jury on whether the substances were crack cocaine. His argument, like McNeal's, is without merit.

The defendants' sentencing memoranda also appear to ask the Court to reweigh the evidence and come to its own determination of whether the substances were proven beyond a reasonable doubt to be crack cocaine. The government argues that once the jury has spoken on an issue of this type, "its verdict controls unless the evidence is insufficient or some procedural error occurred; it is both unnecessary and inappropriate for the judge to reexamine, and resolve

in the defendant's favor, a factual issue that the jury has resolved in the prosecutor's favor beyond a reasonable doubt." *United States v. Rivera,* 411 F.3d 864, 866 (7th Cir. 2005). The Court agrees. Were, however, the Court to find the evidence insufficient to support the jury's finding that the substance was crack cocaine, we certainly would be empowered to "acquit" the defendants on that point – which would leave them free from the enhanced minimum and maximum penalties that apply to offenses involving crack. That said, the evidence was sufficient to support the jury's finding, as the Court has already concluded.

If there were a procedural error relating to the crack issue, it stands to reason that the Court would have the authority to order a new trial (it is unclear whether this would be a new trial on all the issues presented to the first juries, or only on the type of narcotic involved). But in their sentencing memoranda, neither defendant seeks a new trial. Moreover, no procedural error regarding the crack issue was cited in either defendant's post-trial motion as a basis for granting a new trial.

In its response to the defendants' sentencing memoranda, the government noted that the special interrogatories submitted to the trial juries asked them, in the event of a guilty finding on each narcotics charge, to state the quantity of "cocaine base" involved in the offense – without reference to the term "crack cocaine." The government correctly noted in its response that neither defendant had made a contemporaneous objection to the interrogatories at trial, thus forfeiting the point. Even after the government flagged the issue, neither defendant sought a new trial; Collins did not reply to the government's response, and McNeal did not request a new trial

in his reply. In short, a new trial does not appear to be an option.[1]

Rather, both the government in its response and McNeal in his reply limit their arguments to a discussion of how the jury's findings should be interpreted. The government argues that the jury found the substance was crack; McNeal argues the jury found it was not crack. The Court considers Collins to have adopted this argument.

We begin our assessment of the parties' arguments by reviewing the pertinent jury instructions. The "elements" instruction given to each jury on Count One, the conspiracy charge, told the jury that to sustain the charge of conspiracy, the government had to prove, among other things, that "the conspiracy charged in Count One existed." *See, e.g.,* Collins Jury Instructions at 7. The jury was given a copy of the indictment. The charging paragraph of Count One, the conspiracy charge, alleged that the defendants conspired to distribute, and to possess with intent to distribute, "a controlled substance, namely, in excess of 50 grams of mixtures containing cocaine base (commonly known as 'crack cocaine'), a Schedule II Narcotic Drug Controlled Substance." Indictment, Count 1 ¶ 1. Count One also made several other references

---

[1] The Court would have rejected such a request had it been made for the first time in the defendants' sentencing memoranda. The defendants made no contemporaneous objection to the jury instructions or verdict forms at trial and thus forfeited any challenge to the instructions relating to this point. *See* Fed. R. Crim. P. 30(d); *Bank of Nova Scotia v. United States,* 487 U.S. 250, 254-55 (1988). If the defendants had raised the issue in their post-trial motions, the Court could have considered whether the giving of the instructions constituted "plain error" despite the absence of a contemporaneous objection. *Cf.* Fed. R. Crim. P. 30(d) (cross-referencing Fed. R. App. P. 52(b), the plain error rule). But defendants did not challenge the instructions or the verdict forms in their post-trial motions. A motion for new trial must be filed within seven days after the verdict is entered, a time limit the Court cannot extend once the period has run. Fed. R. Crim. P. 33(b)(2). In addition, the Court cannot grant a new trial *sua sponte* once the seven day time period has run. *See Carlisle v. United States,* 517 U.S. 416 (1996); *United States v. Stephens,* ___ F. Supp. 2d ___, No. 02 CR 661, 2003 WL 21439862, at * 4 (N.D. Ill. June 20, 2003), *aff'd,* 421 F.3d 503 (7th Cir. 2005).

to crack cocaine, alleging that McNeal cooked cocaine into crack cocaine for Collins; that Collins stored wholesale quantities of crack cocaine; that McNeal cooked cocaine into 673 grams of crack cocaine for Collins on a particular date; and that after McNeal had done so, Collins delivered the crack cocaine to Rokesha Johnson for transport to another location. Indictment, Count 1 ¶¶ 3, 4, 6, 7.[2]

No reference to crack cocaine can be found, however, in the instructions for Count One or the verdict form for that Count. The elements instruction simply referred to the charge in the indictment, without elaboration. The verdict form told the jury that if it found the defendant guilty, it had to determine another question by checking the applicable box on the verdict form. The question asked the jury to find the quantity of "cocaine base" that it found had been proved beyond a reasonable doubt to have been a foreseeable consequence of the conspiracy. The form made no reference to crack cocaine but rather asked the jury to find the quantity "of a mixture or substance containing cocaine base." *See, e.g.,* Collins Jury Instructions at 32.

The elements instruction on Count Two, the charge of possession with intent to distribute, read as follows:

> To sustain the charge of possession of cocaine base (commonly known as "crack cocaine") with intent to distribute as charged in Count Two, the government must prove the following propositions:
>
> First, the defendant knowingly or intentionally possessed cocaine base;
>
> Second, the defendant possessed the cocaine base with the intent to deliver it to another person.
>
> ...

---

[2] In the copy of the indictment given to the jury, these paragraphs were renumbered to account for a paragraph that was excised from that version.

*See, e.g.,* Collins Jury Instructions at 19. Count Two of the indictment, referenced in the instruction, alleged that the defendants possessed with intent to distribute "a controlled substance, namely, in excess of 50 grams of mixtures containing cocaine base (commonly known as 'crack cocaine'), a Schedule II Narcotic Drug Controlled Substance." Indictment, Count 2. The verdict form for Count Two, like the one for Count One, asked the jury in the event of a guilty finding to determine the amount of "a mixture or substance containing cocaine base" that had been proved beyond a reasonable doubt; it made no reference to crack cocaine.

The government argues that a fair reading of the verdict "makes clear that the jury equated crack cocaine with cocaine base." Gov't Resp. to Defs' Sentencing Memoranda at 7. McNeal argues that "the jury was never asked to find 'crack'" and "did not find McNeal guilty of 'crack,'" but rather "unanimously agreed that McNeal was involved with more than 50 grams of cocaine base, not 'crack.'" McNeal Reply at 3, 5 & 7.

As noted earlier, in this Circuit at least, the enhanced penalties that § 841(b) imposes for offenses involving cocaine base actually apply only to offenses involving crack cocaine, as opposed to other forms of cocaine base. *See Edwards,* 397 F.3d at 571. The elements instructions and the verdict forms ought to have specified clearly that the jury was required make findings on the quantity of crack cocaine involved, not cocaine base. In a different context, the Seventh Circuit has suggested that a verdict that is ambiguous as to the type of drug involved cannot sustain imposition of a sentence based on the alternative that supports a more severe sentence. *See United States v. Banks,* 78 F.3d 1190, 1202 (7th Cir. 1996) (multiple-object conspiracy case; ultimately holding that no ambiguity existed because indictment was worded in conjunctive, not disjunctive).

10

Neither side has cited any cases that discuss how the Court should determine the meaning of a verdict in these circumstances. McNeal argues that it is inappropriate to refer to the indictment to determine what the jury found. The Court does not agree. The indictment was specifically referenced in the elements instructions for both Count One and Count Two. We see no reason why the Court cannot consider a document the jury was told to examine. *See Banks,* 78 F.3d at 1203-04 (referring to indictment that was cross-referenced in instructions). But this begs the question of what looking at the indictment tells us about what the jury decided. As indicated earlier, the indictment makes numerous references to crack cocaine. One may fairly infer that the jury considered these allegations in making its determination of guilt. But here we are considering the jury's quantity finding, not its determination that the government had proved the elements of the offenses. The instructions, whether considered alone or in light of the indictment's wording, said nothing to the jury about how it was to go about making the quantity determination on the verdict form or what it had to find about the type of narcotic involved. And the verdict form itself – the only part of the instructions that clearly tells us what the jury decided – made no reference to crack cocaine, but only to cocaine base.

In short, neither the indictment nor the instructions indicate that the jury intended to make a finding about "crack" when it completed a verdict form that referred only to "cocaine base," of which crack is one (but only one) form. If the evidence had reflected no distinction between cocaine base and crack cocaine, perhaps it would be appropriate to construe the form as a finding that crack was involved. But although the government's forensic chemist testified that the substances were consistent with crack cocaine, *see* Adkins Tr. 16, she also stated that not all cocaine base is crack cocaine, and she conceded that her worksheets prepared

contemporaneously with her testing referred only to cocaine base, not crack cocaine. *See id.* 21. Given this evidence, and the fact the verdict form was worded to require only a finding about "cocaine base," and not crack, the jury could well have found only that cocaine base in the broad sense was involved. At a minimum, the Court cannot say that the verdict form reflects a finding by the jury that the government had proved beyond a reasonable doubt that the substance was crack cocaine.

As noted earlier, the parties cited no cases addressing the particular issue involved here. But McNeal makes the point that just as, under *Rivera,* a court may not reexamine and resolve in the defendant's favor a factual issue that the jury has decided in the prosecution's favor, it stands to reason that a court may not resolve in the prosecution's favor a factual issue on which the jury has made a contrary finding – at least on issues that *Apprendi* assigns to the jury. The Supreme Court held in *United States v. Watts,* 519 U.S. 148, 152-55 (1997), that a judge may sentence a defendant based on conduct that was the subject of acquittal by a jury, but this was due largely to the difference in the standards of proof for guilt and ordinary sentencing issues.[3] Under *Apprendi,* sentencing issues that involve enhancement of the maximum sentence, as is the case with the "crack" determination, must be proved beyond a reasonable doubt, unlike other types of sentencing factors. Thus *Watts* does not permit the Court to enhance the defendants' sentences by finding what the jury did not.

Under the circumstances, and given the unfortunate omission of the term "crack cocaine" from the verdict form, the Court is constrained to conclude that the jury did not make the

---

[3] The Seventh Circuit has held that *Watts* survives the Supreme Court's decision in *United States v. Booker,* 125 S.Ct. 738 (2005), to make application of the Guidelines non-mandatory. *See United States v. Price,* 418 F.3d 771, 788 (7th Cir. 2005).

findings necessary to subject the defendants to the higher maximum (and thus the higher minimum) applicable to narcotics offenses involving crack cocaine, and that it is inappropriate for the Court to revisit the issue as a fact finder.[4]

This conclusion is consistent with, and supported by, the decision in *United States v. Thomas,* 360 F. Supp. 2d 238 (D. Mass. 2005), the only case anything like this one disclosed by the Court's research. In *Thomas,* the indictment charged the defendant with an offense involving "cocaine base." The verdict form provided to the jury directed it to consider whether the government had proved the defendant guilty of possessing with intent to distribute "cocaine base, sometimes known as 'crack cocaine.'" Though the indictment in the present case was slightly more specific than the one in *Thomas,* the verdict form was less so, for unlike in *Thomas* it made no mention of crack cocaine. Despite the somewhat more specific verdict form in *Thomas,* the judge concluded that the form's "ambiguous wording ... did not require [the jury] necessarily to address the more specific question of whether the substance actually distributed by the defendant ... was, in fact, cocaine base in the form of crack. For all that can be known for certain from the special verdict form, the jury might have simply intended to find the defendant guilty of crimes involving cocaine base." *Id.* at 240. The same is true in this case. As in *Thomas,* "[t]he record in this case is not sufficiently clear for the court to conclude that the jury

---

[4] The higher maximums and minimums for offenses involving crack operate in tandem and are imposed via a single subsection of § 841; the two cannot be divorced. Under *Apprendi,* "[i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed." *Apprendi,* 530 U.S. at 490. *See also Harris v. United States,* 536 U.S. 545, 554 (2002) (fact determination that does not "authorize the judge to impose [a] ... higher penalt[y]" but rather "alter[s] only the minimum" sentence may be treated as a sentencing factor to be determined by the judge).

13

found beyond a reasonable doubt that this defendant was guilty of possession with intent to distribute and distributing *crack* cocaine versus generic cocaine base." *Id.* at 241 (emphasis in original).

## Conclusion

For the reasons stated above, the Court denies defendants' motions for judgment of acquittal or for a new trial [docket # 130-1]. The Court further concludes that defendants will not be sentenced pursuant to the enhanced maximum and minimum sentences applicable to narcotics offenses involving crack cocaine but rather will be sentenced under the penalties applicable to offenses involving cocaine. *Cf.* U.S.S.G., App. C, Amend. 487 (1993) ("forms of cocaine base other than crack ... will be treated as cocaine" for purposes of the Sentencing Guidelines).

/s/ Matthew F. Kennelly
MATTHEW F. KENNELLY
United States District Judge

Date:   October 18, 2005